**IN THE DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| Rodney Dorsey | ) | |
| 1403 Ricketts Road | ) | |
| Frederick, MD 21702 | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: |
| | ) | |
| v. | ) | |
| | ) | |
| Board of Education | ) | |
| Frederick County Public Schools | ) | |
| 191 South East Street | ) | |
| Frederick, MD 21701 | ) | JURY TRIAL DEMANDED |
| | ) | |
| Frederick County Public Schools | ) | |
| 191 South East Street | ) | |
| Frederick, MD 21701 | ) | |
| | ) | |
| Frederick Association County of | ) | |
| School Support Employees Inc. (FASSE) | ) | |
| 1 Wormans Mill Court, Suite 15 | ) | |
| Frederick, MD 21701 | ) | |
| | ) | |
| Frederick County Sheriff's Office | ) | |
| 110 Airport Drive East | ) | |
| Frederick, MD 21701 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| **SERVE:** | ) | |
| | ) | |
| Dr. George C. Hummer, Superintendent | ) | |
| Rae Gallagher, President | ) | |
| Frederick County Board of Education | ) | |
| 191 South East Street | ) | |
| Frederick, MD 21702 | ) | |
| | ) | |
| Byron C. Black, Frederick County Attorney | ) | |
| Winchester Hall | ) | |
| 12 E. Church St. | ) | |
| Frederick, MD 21701 | ) | |
| _____ | ) | |

1

## COMPLAINT

**COMES NOW**, Plaintiff Rodney Dorsey ("Mr. Dorsey"), by and through undersigned counsel, files this Complaint against the above-named Defendants and alleges as follows:

## INTRODUCTION

1. This is an action authorized and instituted pursuant to the Civil Rights Act of 1866, Section 1981(a)("Section 1981"), to redress discrimination based on race (Black/African American) as well as retaliation for his protected activity, as well as violations of the Family Medical Leave Act ("Act.")

2. This action is brought pursuant to 42 U.S.C. § 1981 to redress discrimination based on race as well as retaliation for protected activity. Plaintiff also asserts state law claims for negligence, negligent supervision, and intentional infliction of emotional distress.

## JURISDICTION AND VENUE

1. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).

2. Jurisdiction is proper in this Court pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501 and § 6-102, as the events giving rise to this Complaint occurred in Frederick County, Maryland.

3. Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to this Complaint occurred in Frederick County, Maryland.

4. Venue is proper in this Court under Md. Rule 2-327 because the Defendants maintain offices and conduct business in Frederick County, Maryland.

**THE PARTIES**

5. Plaintiff Rodney Dorsey is an African American male, age 68, who resides in Frederick, Maryland, which is a part of Frederick County.

6. Mr. Dorsey has been a dedicated employee of Frederick County Public Schools ("FCPS") for more than forty-five (45) years.

7. Mr. Dorsey has been an active member of the Frederick Association of School Support Employees.

8. Defendant, Board of Education of Frederick County ("the Board"), is a public body with corporate responsibility for the governance, oversight, operations, and employment policies of Frederick County Public Schools (FCPS).

9. Defendant, Frederick County Public Schools ("FCPS"), is a public educational institution operating under the authority of the Board.

10. Defendant, Frederick Association of School Support Employees Inc. (FASSE), is an affiliate of the Maryland State Education Association (MSEA) and the National Education Association (NEA), that represents and protects the rights of individual members before the Board of Education and other legal authorities and serves as the recognized collective bargaining unit for FCPS custodial employees.

11. Defendant, Frederick County Sheriff's Office, is the law enforcement agency responsible for the deputies' conduct described herein.

12. Defendant FCPS's Urbana High School is the workplace of Mr. Dorsey at all times relevant to this Complaint.

13. John and Jane Doe Defendants are FCPS supervisors, Human Resources managers, and administrative officials respectively, whose identities are presently unknown but who participated in or facilitated the discrimination, harassment, and retaliation alleged herein.

## NATURE OF THE ACTION

14. Plaintiff brings this action to recover all legal and equitable remedies available for Defendants' discrimination and retaliation in violation of Section 1981 of the Civil Rights Act of 1866, including back pay, front pay, punitive damages, and compensatory damages in an amount to be determined by the jury that would fully compensate him for the economic loss, physical and psychological injury, humiliation, embarrassment, mental and emotional distress, prejudgment interest, attorneys' fees, expenses, and costs of the action.

15. Plaintiff's damages are significant, including, but not limited to, aggravated medical symptoms and costs, loss of compensation, loss of consortium, the loss of reputation, career advantage, emotional tranquility, and denial of his constitutional and statutory rights.

## FACTS

16. Plaintiff, Rodney Dorsey, Mr. Rodney Dorsey, is a 68-year-old Black/African American male, who has been employed with Urbana High School, as a Custodian since the fall of 1997.

17. Mr. Dorsey has been a hardworking, dedicated employee of Frederick County Public Schools for more than forty-five (45) years because he started his employment with the County while he was a student at Government Thomas Johnson High School in 1972.

18. Mr. Dorsey has been an active member of FASSE throughout his employment with Fredick County Public Schools where he was guaranteed protections, benefits, and safe working conditions.

19. During the early part of his tenure, Mr. Dorsey worked his way up and was promoted to Assistant Lead Custodian in 1999.

20. In 2009, Mr. Dorsey was again promoted and has served as the Lead Custodian of Urbana High School ever since.

21.  In addition to his duties as Lead Custodian, he became a mentor to the Learning for Life Students.

22. Mr. Dorsey has been a successful and devoted member of the support staff of Urbana High School for over 45 years and has prided himself on making a difference in the lives of  the students, faculty, and staff he has served.

23. On July 30, 2022, in the early morning hours, Mr. Dorsey's life changed forever.

24. Around 1:23am, Mr. Dorsey, who was already asleep for the night,  received a call from a female security dispatcher from Central Station Monitoring, GCSI Security in New Jersey. Once he answered the call, the dispatcher stated that she was alerting Mr. Dorsey of a security alarm at Urbana High School. Mr. Dorsey received additional calls at 1:32am, 1:41am, and 1:50am from the dispatcher advising him to report to Urbana High School to respond to a burglar alarm.

25. In response to the call from the dispatcher, Mr. Dorsey confirmed that he will report to the school and advised that he would be driving a Silver Hyundai.

26. At approximately 2:00am, Mr. Dorsey and his wife, Tracey Dorsey, arrived at Urbana High School.

27. Consistent with FCPS's longstanding custom and practice, Mr. Dorsey followed the "unwritten protocol" for responding to such alarms—driving to the school in his personal car in order to search the premises and entering into the building to investigate. Mr.

Dorsey's conduct in response to the burglar alarm on July 30, 2022, was solely based on the training he received as Lead Custodian for FCPS.

28. Although Urbana High School did not have any written standard policies in place for responding to burglar alarms on July 30, 2022, Mr. Dorsey has followed the "unwritten protocol" since 1999 and the school district has never adopted any formal changes to this customary practice.

29. Additionally, Mr. Dorsey has trained other employees using this customary practice. Specifically, when alerted by a burglar alarm, Mr. Dorsey is to report to the school, provide former Assistant Principal, Mr. Hombach, a report when he responds to the call, and then Mr. Hombach notifies the Security Department of the report. Again, Mr. Dorsey's actions did not deviate from what his protocol has been over more than four (4) decades of Mr. Dorsey's tenure as an FCPS employee.

30. After Mr. Dorsey arrived, he walked the perimeter inside and outside of the building and determined that there was no threat.

31. While inside the school building, Mr. Dorsey received a phone call at approximately 2:10am from the Frederick County Sheriff's Office to inquire about whether Mr. Dorsey was responding to the call. Considering the longstanding protocol of Mr. Dorsey responding to burglar alarms, the County Sheriff's Office was aware of the Urbana High School's standard protocol and Mr. Dorsey role in it.

32. While Mr. Dorsey was on the phone with the officer, Mr. Dorsey was walking through the greenhouse to exit the building to meet with them.

33. While exiting the building, Mr. Dorsey was advising the officer that he was on the premises and had secured the building, but then his call disconnected and dropped.

6

34. As he concluded his investigation, Mr. Dorsey observed that local police officers had arrived outside of the building as well, based on the police lights he saw outside of the building's windows.

35. After locking the building up, he exited the building to meet the responding officers to let them know that there was no threat and the building was secure.

36. When Mr. Dorsey walked out of the building, he was aggressively met by Frederick County deputy sheriffs with their guns drawn and pointed at him. Despite him identifying himself, having his work badge around his neck, and wearing a brightly colored shirt, Mr. Dorsey was approached as a suspect in the commission of a crime and treated like one because of his race (African American) and color (Black).

37. Mr. Dorsey was confused, frightened, and terrified that he, as an African American/Black man, was surrounded by police deputies with their guns drawn directly at him. They began to yell commands at him, as though he was a suspect of a crime, when he was simply at the building upon request and only to do his job.

38. Despite Mr. Dorsey identifying himself and complying with all instructions, the deputies continued to threaten Mr. Dorsey with lethal force, causing him to fear for his life.

39. Mr. Dorsey walked out of his workplace and was met with three (3) police officers pointing guns at him, ignoring the identification of him as an FCPS employee, ignoring the physical employee identification badge that was hanging around Mr. Dorsey's neck, as well as his brightly worn t-shirt.

40. In this case, Mr. Dorsey who is Black and of African American descent, was negatively, adversely, and detrimentally impacted during the early morning hours of July 30, 2022, and has never been the same since.

41. The incident occurred because FCPS failed to establish or communicate a clear, written policy for custodial response to alarms and failed to coordinate with law enforcement to ensure employee safety.

42. Following this traumatic incident, Mr. Dorsey initially was on Assault leave with pay, which should have been under the provisions of Maryland State law.

43. On September 8, 2022, Paula Lawton (acting HR Director) advised Mr. Dorsey that he would have to utilize his accrued sick leave or, if he was excused by a doctor, he could submit a Workers' Compensation claim, use his sick/personal or annual leave with medical documentation.

44. Mr. Dorsey submitted a Worker's Compensation claim on September 22, 2022, but the subsequent award issued years later was wholly insufficient.

45. Since this occurrence, Mr. Dorsey has been evaluated by medical professionals to be treated for ongoing conditions such as panic disorder, post-traumatic stress disorder, severe depression, anxiety disorder, and carious panic symptoms. Mr. Dorsey has undergone continuous evaluations from multiple medical and mental health providers.

46. Thereafter, FCPS HR officials and administrators—including members of FASSE—began harassing Mr. Dorsey, urging him to "retire" despite his ongoing medical treatment.

47. Mr. Dorsey has had a troublesome time receiving a response from FCPS after July 30, 2022. Mr. Dorsey did not receive any communication or assistance from FCPS leadership, and Union representatives until 28 days after July 30, 2022. Furthermore, it took the Chief of Staff over a year and a half to act on Mr. Dorsey's request. This was done after a letter was sent to the Board of Education of FCPS, which was forwarded to the Superintendent. It took the Superintendent forwarding the letter to the Chief of Staff for Mr. Dorsey to get

his case taken seriously. Mr. Dorsey and his wife (Tracey) exhausted all possible legal efforts with no direction from FCPS or FASSE. Mr. Dorsey has had a hard time moving forward with work and does not feel supported by FCPS leadership.

48. Since the July 30, 2022, incident, Administrators at Urbana High School, HR Managers, Directors, FASSE, and Benefits Personnel Officers have harassed Mr. Dorsey to come back to work despite him continuously undergoing medical treatment and have been harassing Mr. Dorsey to retire.

49. Mr. Dorsey has been seen by medical professionals as a result of the July 30, 2022, incident including treatment to psychotherapy, psychiatric treatment, and prescribed medication for the post-traumatic stress disorder (PTSD) and anxiety he currently sustains.

50. Mr. Dorsey has had to undergo multiple Psychotherapeutic studies to examine his level of mental, emotional, and behavioral stress from the unfortunate incident on July 30, 2022.

51. Mr. Dorsey has medical documentation to show these effects and its negative interruption of his enjoyment of daily social interactions, and his overall enjoyment of life.

52. Mr. Dorsey has also been under treatment by a dermatologist to assist with skin rashes directly caused by the anxiety and stress from the July 30, 2022. Mr. Dorsey's social interactions have been severely impacted since July 30, 2022.

53. Over the course of a year, Mr. Dorsey was contacted on numerous occasions to return to work as if Mr. Dorsey did not endure a traumatic life event. Mr. Dorsey's life was put in jeopardy and he was not protected, all because he was simply doing his job.

54. FCPS employees like Amanda McGraff downplayed the severity of the incident and its impact by stating to Mr. Dorsey, "*I hope you are enjoying your retirement*" while Mr. Dorsey was following his medical team's directions to get out and walk.

55. FCPS never investigated what occurred on July 22, 2022 and how Mr. Dorsey ended up in such a traumatic and life-altering situation.

56. Specifically, Mr. Robert Wedge did not explore what went wrong during the response to the burglar alarm from the Frederick County Sheriff Department and Central Station Monitoring, GCSI Security, which contributed to Mr. Dorsey's injuries. Frankly, the incident and Plaintiff's injuries were downplayed and dismissed because of his race/color.

57. FCPS failed to provide adequate support, delayed communication for over 28 days after the incident, and took nearly 18 months to act meaningfully on Mr. Dorsey's requests for reasonable accommodation and assistance.

58. The repeated pressure, lack of empathy, and dismissive statements by FCPS and FASSE representatives aggravated Mr. Dorsey's medical conditions, further impairing his ability to work and recover.

59. FCPS's failure to investigate, discipline employees involved, or establish protective measures demonstrates deliberate indifference and reckless disregard for Mr. Dorsey's safety and civil rights.

60. Although Mr. Dorsey was awarded a Permanent Partial Disability Award Order from his Worker's Compensation hearing with retroactive benefits dating back to October 2023, it was wholly insufficient, did not address the medical damages that he experienced, and there were discrepancies identified in both Dr. Lasson's and Dr. Siebert's reports. Specifically, Dr. Lasson conducted a 15-minutes long telephonic Independent Medical Examination (IME) with no in-person exam, which adversely affected his permanent disability rating and disability award.

61. While the Order states: "6% is reasonably attributable to the accident injury (psychological condition) and 5% is due to pre-existing conditions at the rate of $224.00, payable weekly, beginning May 1, 2022, for a period of 30 weeks," the apportionment granted for the psychological condition reflects 5% instead of the 6% that was identified.

62. Based on recent medical evaluations, as of approximately June 2025, Mr. Dorsey's symptoms and medical conditions have severely advanced.

63. Mr. Rodney Dorsey has been in treatment at Integrative Behavioral Health since September 7, 2022, under the care of Darrel Jamison, LCSW-C, MSW, Lead Clinician at Integrative Behavioral Health, LLC.

64. Pursuant to a recent evaluation by Clinician Jamison, at the time of Mr. Dorsey's initial evaluation, "*Mr. Dorsey reported feeling overwhelmed with symptoms of poor motivation, impaired thought control, insomnia, and significant anxiety and depression. He also described a persistent fear of being shot or harmed by authorities after a traumatic incident in which three sheriff's deputies drew their guns on him while he was responding to a burglary alarm at his place of employment. This event marked the beginning of a cascade of trauma responses that have persisted and intensified over time.*"

65. Clinician Jamison reports that "*Mr. Dorsey's current symptoms are consistent with Post-Traumatic Stress Disorder (PTSD), Major Depressive Disorder (MDD), and Generalized Anxiety Disorder (GAD), now progressing into social phobia. Unfortunately, his progress has been significantly undermined by repeated re-traumatization in systemic settings. According to Mr. Dorsey, during a workers' compensation court hearing, a state-appointed doctor insinuated that Mr. Dorsey was doing something inappropriate by attempting to enter a couple of stores while working on his exposure therapy. This assertion was*

*inaccurate and invalidated a clinically sound treatment strategy. Mr. Dorsey feels that his workers' comp attorney provided minimal communication with biased representation during the hearing. Mr. Dorsey perceives this abandonment and invalidation, further compounding his mistrust and hopelessness.*"

66. In an October 2025 evaluation, Clinician Jamison provided that in his professional opinion, "*The rating seems to contain calculation errors and does not accurately reflect the severity of Mr. Dorsey's impairments. Clinically, these systemic failures have resulted in social withdrawal and isolation, heightened mistrust of authority and institutions, increased depressive symptoms and hopelessness, and a stagnation in therapeutic progress despite active treatment engagement. Mr. Dorsey's deterioration is not due to a lack of participation or motivation, but rather to further traumatization caused by conflicting and invalidating responses from legal and medical systems.*"

67. Clinician Dr. Kerniba Ghoneim, DNP, PMHNP, CMHIMP, MBL of Vigor Integrative Wellness recently reports, "*Mr. Dorsey is currently in recovery following a significant traumatic workplace event that has resulted in multiple serious mental health conditions, including severe depression with psychotic features, Post-Traumatic Stress Disorder (PTSD), panic disorder, and generalized anxiety disorder. He continues to experience debilitating symptoms, including intrusive thoughts and flashbacks of the traumatic event, severe anxiety and panic attacks, depressed mood, sleep disturbances, and avoidance of trauma-related triggers and reminders, particularly the workplace where the incident occurred. While Mr. Dorsey is receiving ongoing treatment through therapy and medication to manage these symptoms, he continues to experience significant distress and*

*functional limitations despite this care. The prospect of returning to the workplace where the trauma occurred causes him intense anxiety, flashbacks, and panic attacks.*"

68. Based on information and belief, Plaintiff asserts that FCPS' actions were nothing more than an attempt to push out a dedicated older aged African American. Furthermore, when Plaintiff spoke out about the disparate treatment, FCPS chose to make it harder for Plaintiff to continue his career. While under active medical supervision, Mr. Dorsey was presented with an offer of reassignment to another school that carried a reduced pay scale and lower grade level. FCPS' offer was simply a way for FCPS to wash their hands of an employee that had dared to confront their discriminatory actions.

## <u>COUNT I</u>

### GROSS NEGLIGENCE
**(Against FCPS, the Board, and FASSE)**

69. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

70. Defendants owed Plaintiff a non-delegable duty to protect him from foreseeable harm and to comply with all statutory obligations related to employee safety, injury response, and benefit administration.

71. Defendants carried duties to train, communicate, and protect employees like Mr. Dorsey who responded to afterhours alarms. Defendants breached that duty by failing to establish procedures or coordinate with law enforcement, directly causing Plaintiff's injuries.

72. Defendants breached that duty through grossly negligent conduct, including but not limited to:

    **a.** Failing to create or enforce a safe, written protocol for alarm responses and after-hours security alarms;

b. Failing to coordinate with law enforcement to prevent foreseeable danger;

c. Ignoring Plaintiff's medical trauma post-incident;

d. Mishandling his workers' compensation claim and suppressing accurate medical findings; and

e. Failing to provide reasonable accommodations for Plaintiff's workplace disabilities.

73. Defendants' conduct was so reckless and wanton as to constitute gross negligence, removing any protection under the Maryland Workers' Compensation exclusivity rule.

74. As a direct result, Plaintiff suffered severe and permanent psychological harm, emotional distress, and loss of livelihood.

## COUNT II

### NEGLIGENT SUPERVISION AND RETENTION
(Against FCPS, the Board, and FASSE)

75. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

76. Defendants knew or should have known that their administrators, HR officials, and union representatives were engaging in conduct that was hostile, discriminatory, and retaliatory toward Plaintiff.

77. Despite this knowledge, Defendants failed to take corrective action, thereby ratifying and perpetuating such misconduct.

78. Defendants' failure to train or supervise employees in handling racial sensitivity, employee trauma, and workplace communication created foreseeable harm to Plaintiff.

79. As a result, Plaintiff sustained continuing psychological injuries, stress-induced medical complications, and loss of employment benefits.

14

80. Moreover, Defendants failed to supervise or discipline staff who mishandled the alarm incident, failed to communicate, and allowed post-incident harassment causing foreseeable harm.

81. The employee's conduct and omissions caused harm to Plaintiff.

82. The employer knew or should have known of the employee's incompetence or unfitness.

83. The employer failed to supervise or take action.

84. The lack of supervision was the proximate cause of Plaintiff's injury.

85. FCPS HR, FCPS administrators, and FASSE failed to supervise or discipline employees who mishandled the alarm response and subsequent harassment. They ignored complaints, enabling further harm.

## COUNT III

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against FCPS, the Board, and FASSE)

86. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

87. While Maryland generally does *not* recognize a standalone claim, emotional distress can be recovered under negligence where: Plaintiff was owed a duty; Defendant breached such duty; and the breach caused emotional injury that was foreseeable and severe.

88. Here, Defendants' negligent acts and omissions—including failure to safeguard Plaintiff's physical and psychological well-being, failure to respond promptly to his injuries, and failure to provide post-incident support—proximately caused Plaintiff's severe emotional distress.

89. Defendants knew or should have known that their conduct would foreseeably cause emotional harm.

15

90. Plaintiff has experienced measurable mental anguish, medical complications, and disruption of daily life as a result of Defendants' negligence.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against FCPS, the Board, and FASSE)

91. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

92. Defendants' conduct—including disregarding Plaintiff's injuries, delaying medical and administrative responses for months, and coercing Mr. Dorsey to retire—was extreme and outrageous and beyond the bounds of decency tolerated in a civilized community.

93. Defendants acted intentionally or with reckless disregard for the probability of causing Plaintiff severe emotional distress.

94. As a result, Plaintiff suffers from Post-Traumatic Stress Disorder (PTSD), Major Depressive Disorder, and Generalized Anxiety Disorder, as documented by multiple medical professionals.

95. Plaintiff has experienced flashbacks, panic attacks, insomnia, and social withdrawal directly attributable to Defendants' conduct.

96. Defendants' conduct was intentional or reckless. Defendants' conduct was extreme and outrageous and the proximate cause  Plaintiff's severe emotional distress.

97. Defendants' actions—including harassment, ridicule, and pressuring Plaintiff to retire following a near-death encounter—were extreme and outrageous.

98. Such conduct intentionally or recklessly caused Plaintiff severe emotional distress.

99. Defendants' conduct—pressuring a injured employee to retire, ignoring his mental health, and dismissing his injuries—was outrageous and caused severe psychological distress.

100.    FCPS and FASSE's actions—including ignoring trauma, pressuring Mr. Dorsey to retire, and dismissing his condition—constitute reckless disregard causing severe psychological injury.

## COUNT V

### RACE DISCRIMINATION (SECTION 1981)
**(Against Defendants Frederick County Sheriff's Office, Frederick County Public Schools, the Board of Education of Frederick County, Urbana High School, and John/Jane Doe Supervisors)**

101.    Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

102.    A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) Plaintiff is a member of a protected class; (2) Plaintiff was qualified for the position; (3) Plaintiff suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

103.    Here, the four (4) elements of a *prima facie* case of race discrimination are met. At all times relevant, Plaintiff was employed by Defendant Frederick County Public Schools ("FCPS") and served as the Lead Custodian of Urbana High School—a position he earned through more than four decades of exemplary service.

104.    Plaintiff is a Black/African American male who was qualified for his position and performed his duties in an exemplary manner.

105.    Plaintiff was subjected to adverse employment actions, discriminatory treatment, and harassment because of his race, including the denial of support and protection following the July 30, 2022 incident, failure to investigate the racially charged use of police force against him, and repeated attempts to pressure him into retirement rather than assist his recovery.

106.    Defendants' actions and omissions—including but not limited to failure to provide a safe protocol for alarm responses, lack of communication, and disregard for Plaintiff's injuries—were motivated, at least in part, by racial bias and stereotypes.

107.    Similarly situated non-Black employees were treated more favorably under comparable circumstances.

108.    As a direct and proximate result of Defendants' discrimination, Plaintiff has suffered loss of income, severe emotional distress, and loss of enjoyment of life.

109.    Because of his race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint.

110.    Defendants' foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

111.    Defendants knew that Plaintiff was African American prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his race.

112.    Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race.

113.    Plaintiff suffered an adverse employment action (e.g., harassment, constructive discharge pressure to retire, denial of support, disparate treatment).

114.    The adverse action occurred under circumstances giving rise to an inference of discrimination (e.g., different treatment than similarly situated non-Black employees, racially charged stereotypes, and failure to support or investigate due to race).

115.     Moreover, Mr. Dorsey, a 68-year-old Black male, was subjected to racial profiling by law enforcement while performing his job, then faced indifference, harassment, and constructive pressure to retire. FCPS failed to protect and support him.

## COUNT VI

### RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

116.     Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

117.     Section 1981 of the Civil Rights Act prohibits an employer from discriminating against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, or national origin, and from retaliating against employees for engaging in protected activity. To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65 (1986).

118.     Here, Plaintiff engaged in protected activity when he complained of disparate treatment, requested accommodations for his trauma-related medical conditions, reported his Workers' Compensation claims on September 22, 2022, and sought accountability for the racially charged incident involving armed deputies.

119.     In retaliation, Defendants engaged in adverse actions against Plaintiff, including harassment, refusal to accommodate, denial of meaningful support, and persistent pressures to retire.

120.     These retaliatory actions were materially adverse and would dissuade a reasonable employee from engaging in protected activity.

121.     Defendants' retaliatory conduct was willful and intentional, carried out in reckless disregard for Plaintiff's rights under federal law.

122.     The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily protected activity.

123.     Plaintiff's prior protected activity was a determining factor in Defendants' unlawful conduct toward Plaintiff.

124.     Plaintiff's prior protected activity was a motivating factor in Defendants' unlawful conduct toward Plaintiff.

125.     Similarly situated employees (no known protected activity) were not subjected to the same, similar, or any adverse treatment.

126.     The reasons proffered by Defendants for its unlawful conduct are pretextual and Defendants cannot further offer any legitimate reason for its unlawful conduct.

127.     Defendants' unlawful conduct negatively impacted the terms, conditions, and benefits of Plaintiff's employment.

128.     Defendants' retaliatory conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendants' discriminatory conduct.

129.     Defendants are directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

130.     As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages - including but not limited to past and future loss of income, benefits, career

opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

131. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendants' treatment and actions were ongoing.

132. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

133. The Defendants must comply with Section 1981 of the Civil Rights Act, and by and through their conduct, violated the law.

134. Defendants' actions were intentional, reckless, and malicious.

135. The reasons proffered by Defendants for their unlawful conduct are pretextual, and Defendants cannot offer any legitimate reason for their unlawful conduct.

136. The employer took a materially adverse action against the Plaintiff (e.g. harassment, unlawful pressures to retire, failure to accommodate medical leave).

137. A causal connection exists between the protected activity and adverse action.

138. Mr. Dorsey complained about his mistreatment and lack of institutional response following the July 30, 2022 incident, submitted his Workers' Compensation Claim on September 22, 2022, and was thereafter pressured to retire and denied accommodations.

## COUNT VII

### DUE PROCESS VIOLATIONS
(Pursuant to 42 U.S.C. § 1983 — Against FCPS, the Board, and Supervisory Defendants)

139. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

140.     Defendants, acting under color of state law, deprived Plaintiff of his property and liberty interests in continued employment and professional reputation without due process of law.

141.     Following the July 30, 2022 incident, FCPS failed to provide Plaintiff with adequate notice, investigation, or opportunity to be heard regarding his status, leave, and employment security.

142.     FCPS's inaction and deliberate indifference resulted in Plaintiff's constructive discharge, (Mr. Dorsey is still employed using the remaining sick leave he has accrued), loss of wages, (overtime/comp time) and damage to his reputation. (FCPS also owes Mr. Dorsey over 200 hours in comp time that has not been addressed since Mr. Hombach departed from Urbana High School and later loss of his life).

143.     The deprivation of Plaintiff's rights was caused by the policies, customs, or deliberate indifference of the Board of Education of Frederick County and Urbana High School administration, including the lack thereof.

**<u>COUNT VIII</u>**

**FMLA VIOLATIONS**

144.     Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

145.     Plaintiff was eligible for FMLA protection at all relevant times and provided medical documentation supporting his need for leave.

146.     Defendants unlawfully interfered with Plaintiff's FMLA rights by misclassifying his leave, failing to provide required notices, and discouraging him from exercising his rights under the FMLA Act.

147.     Defendants further retaliated against Plaintiff for seeking FMLA leave by delaying approval, harassing him about returning to work, and pressuring him to retire.

148.     As a direct result, Plaintiff suffered financial loss, humiliation, and emotional distress.

## COUNT IX

### DUE PROCESS VIOLATIONS:
### FAILURE TO PROVIDE FULL AND FAIR COMPENSATION / BAD FAITH HANDLING OF WORKERS' COMPENSATION BENEFITS

149.     Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

150.     Under Maryland law and FCPS employment policy, Defendants owed Plaintiff a duty of good faith and fair dealing in connection with the handling of workplace injury claims, including submission, investigation, and defense of his workers' compensation claim.

151.     Defendants breached that duty by failing to timely process, support, or advocate for Plaintiff's legitimate injury and psychological injury sustained in the course of employment on July 30, 2022.

152.     Defendants further acted in bad faith by:

   a. Failing to conduct or cooperate in a fair medical evaluation of Plaintiff's injuries;

   b. Permitting biased or cursory "Independent Medical Examinations" that grossly understated his condition;

   c. Failing to appeal or correct errors once identified; and

   d. Misclassifying and minimizing Plaintiff's permanent partial disability.

e.   These acts were intentional, reckless, and in violation of the duty to act in good faith toward an employee seeking lawful statutory benefits.

f.   Defendants' bad faith and misconduct deprived Plaintiff of benefits to which Plaintiff was lawfully entitled and exacerbated his emotional and financial suffering.

## COUNT X

**DUE PROCESS VIOLATIONS:**
**NEGLIGENT MISREPRESENTATION AND ADMINISTRATIVE NEGLIGENCE IN WORKERS' COMPENSATION PROCESS**

153.   Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

154.   Defendants, through their agents and administrators, made false representations and material omissions regarding Plaintiff's workers' compensation benefits, including the scope of coverage, expected award, and procedures for review or appeal.

155.   Specifically, Defendants led Plaintiff to believe his award reflected a full and accurate accounting of his injuries when they knew or should have known that the evaluations were deficient and incomplete.

156.   Defendants had a duty to communicate accurate information concerning the nature of his injuries, claim status, and appeal deadlines.

157.   Defendants breached that duty by failing to inform Plaintiff of discrepancies in medical evaluations, failing to provide copies of all relevant documents in a timely manner, and failing to assist Plaintiff in protecting his right to appeal.

158.     As a direct and proximate result, Plaintiff was injured when he lost the ability to pursue full benefits under Maryland's Workers' Compensation Act and has been left without an adequate remedy.

159.     Defendants' conduct caused Plaintiff financial hardship, increased medical debt, and further psychological injury.

## COUNT XI

## DECLARATORY RELIEF (28 U.S.C. §§ 2201–2202)

160.     An actual controversy exists as to whether Defendants' handling of Plaintiff's injury, claim, and compensation violated his constitutional and statutory rights.

161.      Plaintiff seeks a declaratory judgment that:

   a.  The Workers' Compensation award does not preclude or limit his right to pursue independent civil claims arising from Defendants' negligence, discrimination, or due process violations; and

   b.  Defendants acted outside the scope of any lawful immunity through gross negligence and deliberate indifference.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Mr. Rodney Dorsey, respectfully prays that this Court grant him the following relief:

   a.  Enter judgment in favor of Plaintiff and against all Defendants jointly and severally;

   b.  Award compensatory damages in the amount of $1,000,000 that would fully compensate Plaintiff for the economic loss, medical costs, loss of promotional potential, reputation, lost wages, lost job benefits, physical and psychological

injury, humiliation, embarrassment, and severe mental and severe emotional distress caused by the conduct of the Defendant alleged herein;

c.   Award punitive damages for willful, malicious, and reckless conduct;

d.   Order injunctive and declaratory relief as appropriate;

e.   Award pre- and post-judgment interest, attorney's fees, and costs; and

f.   Grant such other and further relief as justice may require.

g.   Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

h.   Order such other relief as this Court deems just and equitable.

## JURY TRIAL

Plaintiff requests a jury trial for all issues so triable herein.

Dated: November 12, 2025

Respectfully submitted,

Dionna Maria Lewis, Esq.
District Legal Group, PLLC
Bar No. 19486
700 Pennsylvania Ave, SE, Suite 2098
Washington, D.C. 20003
Phone: (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Rodney Dorsey*