**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| RODNEY DORSEY,<br>*Plaintiff*,<br>v.<br>BOARD OF EDUCATION FOR FREDERICK COUNTY, *et al.*,<br>*Defendants*. | Case No. 25-cv-3731-ABA |

**MEMORANDUM OPINION**

Plaintiff Rodney Dorsey previously worked as a custodian in the Frederick County public school system. He alleges that, in July 2022, he was the victim of an incident of racial profiling in which Frederick County deputy sheriffs mistook him for a burglar at the school and pointed their guns at him. He has sued several defendants in connection with the aftermath of that event, alleging that his employer and union discriminated against him because of his race and acted unlawfully with respect to his requests for medical leave. All Defendants have moved to dismiss. For the reasons explained below, the Court will grant the motions and dismiss Mr. Dorsey's complaint.

## I. BACKGROUND[1]

Mr. Dorsey states that he is a "Black/African American male" who previously worked as a custodian at Urbana High School ("Urbana"). ECF No. 4 ¶ 16. Urbana is a public school in Frederick County and thus is overseen by Defendant Board of Education for Frederick County (the "Board"). *Id.* ¶ 8. Mr. Dorsey began working at Urbana in 1997 but had been employed in the Frederick County public school system

[1] At the pleadings stage, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

since 1972. *Id.* ¶¶ 16–17. During his entire employment, Mr. Dorsey was an "active member" of Defendant Frederick Association of School Support Employees Inc. ("FASSE"), which "serves as the recognized collective bargaining unit" for Frederick County public schools custodial employees. *Id.* ¶¶ 10, 18. Mr. Dorsey was promoted to "lead custodian" of Urbana in 2009. *Id.* ¶ 20.

This case arises from an incident on July 30, 2022. At approximately 1:30 a.m., Mr. Dorsey received a call alerting him that a security alarm had gone off at Urbana. *Id.* ¶ 24. Mr. Dorsey followed what he alleges was an "unwritten protocol" for handling such alarms that had been in place for decades: he drove to the school to search the premises and investigate what had caused the alarm, planning to report his findings to an assistant principal. *Id.* ¶¶ 23–29. During his search of the premises, Mr. Dorsey received a call from Defendant Frederick County Sheriff's Office (the "Sheriff's Office"). Mr. Dorsey alleges that the Sheriff's Office was aware of the "unwritten protocol" that the lead custodian at the school would "search the premises and enter[] into the building to investigate." *Id.* ¶¶ 27, 31. Mr. Dorsey alleges that despite this knowledge and the phone conversation, upon exiting the school building he was "aggressively met by Frederick County deputy sheriffs with their guns drawn and pointed at him," who "began to yell commands at him, as though he was a suspect of a crime[.]" *Id.* ¶¶ 36–37. The deputy sheriffs allegedly "continued to threaten Mr. Dorsey with lethal force" even after he identified himself, "causing him to fear for his life." *Id.* ¶ 38.

This incident "detrimentally impacted" Mr. Dorsey's mental health, both at the time it occurred and in the years since. *Id.* ¶ 40. He has subsequently received treatment for "ongoing conditions such as panic disorder, post-traumatic stress disorder, severe depression, [and] anxiety disorder." *Id.* ¶ 45. He also alleges that he has "been under

treatment by a dermatologist to assist with skin rashes directly caused by the anxiety and stress" of the encounter. *Id.* ¶ 52.

In the time immediately following the encounter with the Sheriff's Office, Mr. Dorsey was placed "on [a]ssault leave with pay[.]" *Id.* ¶ 42. In September 2022, the "acting HR Director" told Mr. Dorsey "that he would have to utilize his accrued sick leave or, if he was excused by a doctor, he could submit a Workers' Compensation claim [and] use his sick/personal or annual leave with medical documentation." *Id.* ¶ 43. Mr. Dorsey submitted a Worker's Compensation claim and eventually received an award for "Permanent Partial Disability" effective October 2023. *Id.* ¶ 60. He contends that this award was "wholly insufficient" because he was not properly examined by the evaluating medical professionals. *Id.* ¶¶ 44, 60.

Mr. Dorsey contends that several individuals employed by FASSE and the Board "harassed" him related to this incident and/or did not adequately respond to his requests for assistance and compensation. He alleges that public school "HR officials and administrators—including members of FASSE—began harassing [him]" and "urging him to 'retire' despite his ongoing medical treatment" since the July 30, 2022 incident. *Id.* ¶¶ 46, 48. As an example of the "harassment" he alleges occurred, he contends that one public school employee told him, "I hope you are enjoying your retirement." *Id.* ¶ 54. Mr. Dorsey alleges that it "took the Chief of Staff" of the Frederick County public schools "over a year and a half to act on [his] request," though the complaint does not specify what this "request" was for. *Id.* ¶ 47. He further contends that the public schools "never investigated what occurred" during the incident with the Sheriff's Office that led to Mr. Dorsey "end[ing] up in such a traumatic and life-altering situation." *Id.* ¶ 55.

Mr. Dorsey's complaint alleges, "[b]ased on information and belief," that the public schools' "actions were nothing more than an attempt to push out a dedicated older aged African American." *Id.* ¶ 68. He further states that "when [he] spoke out about the disparate treatment, [the public schools] chose to make it harder for [him] to continue his career." *Id.* They did this by "present[ing]" Mr. Dorsey "with an offer of reassignment to another school that carried a reduced pay scale and lower grade level." *Id.* ¶ 68.

Mr. Dorsey filed his complaint on November 13, 2025, and a corrected complaint four days later. ECF Nos. 1, 4. As of those filings, Mr. Dorsey was "still employed using the remaining sick leave he ha[d] accrued." ECF No. 4 ¶ 142. However, at the hearing Mr. Dorsey's counsel confirmed that he retired from employment with the Board in February 2026 and had never returned from leave following the incident in July 2022.

The complaint named the Board, FASSE, and the Sheriff's Office as Defendants, as well as Urbana and "Frederick County Public Schools" ("FCPS"). *Id.* ¶¶ 8–12. The complaint also names as Defendants an unspecified number of "John and Jane Doe Defendants" who are FCPS "supervisors, Human Resources managers, and administrative officials respectively [sic], whose identities are presently unknown[.]" *Id.* ¶ 13. Mr. Dorsey's counsel confirmed at the hearing that any claims against FCPS and Urbana should be considered withdrawn, as they are not legal entities capable of being sued. Counsel for Mr. Dorsey also withdrew the claims against the unnamed individual "John/Jane Doe Supervisor" defendants at the hearing.

Following these concessions, the Counts are as follows:

- Count I: gross negligence against the Board and FASSE
- Count II: negligent supervision and retention against the Board and FASSE

- Count III: negligent infliction of emotional distress against the Board and FASSE
- Count IV: intentional infliction of emotional distress against the Board and FASSE
- Count V: race discrimination under 42 U.S.C. ¶ 1981 against the Sheriff's Office and the Board (as discussed below, Mr. Dorsey also withdrew this Count as to the Sheriff's Office)
- Count VI: retaliation under 42 U.S.C. ¶ 1981. The Defendants are not specified in the complaint, but counsel for Mr. Dorsey stated at the hearing that this Count is asserted against the Board and FASSE.
- Count VII: due process violations under 42 U.S.C. ¶ 1983 against the Board and FASSE. Only the Board is named as a Defendant in the complaint, but counsel for Mr. Dorsey asserted that this Count was also brought against FASSE (this Count fails to state a claim and is untimely regardless for the reasons explained below).
- Count VIII: "FMLA violations." The Defendants are not specified in the complaint, but counsel for Mr. Dorsey clarified at the hearing that this Count is asserted only against the Board.
- Count IX and X:" due process violations" in connection with violating duties under Maryland law related to the workers' compensation process (the Defendants are not specified). Mr. Dorsey's counsel clarified at the hearing that this count is brought under Maryland law, not federal law.
- Count XI: declaratory judgment

The Sheriff's Office, FASSE, and the Board moved to dismiss. ECF Nos. 8, 9, 18. Mr. Dorsey opposed all three motions, ECF Nos. 25–27, and the Board and FASSE filed

replies, ECF Nos. 28, 31. The Sheriff's Office did not file a reply. The Court held a hearing on all three motions on August 4, 2026.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

## III. DISCUSSION

### A. Discrimination under § 1981 (Count V)

Regarding his discrimination claims, Mr. Dorsey contends that he was "subjected to adverse employment actions, discriminatory treatment, and harassment because of his race, including the denial of support and protection following the July 30, 2022 incident, failure to investigate the racially charged use of police force against him, and repeated attempts to pressure him into retirement rather than assist his recovery." ECF No. 4 ¶ 105. He contends that these actions were "motivated, at least in part, by racial

bias and stereotypes," and that "[s]imilarly situated non-Black employees were treated more favorably under comparable circumstances." *Id.* ¶¶ 106–07.

42 U.S.C. § 1981(a) guarantees all individuals "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." "The Supreme Court has construed § 1981 to prohibit intentional racial discrimination in contracting, including in the employment relationship." *Gordon v. Heath*, 179 F.4th 263, 271 (4th Cir. 2026). "To prevail, a plaintiff must initially plead and ultimately prove that, but for race, [the plaintiff] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). At the pleading stage, a § 1981 plaintiff must do more than allege facts "*consistent* with discrimination," and instead, must allege facts that "support a *reasonable inference* that the decisionmakers were motivated by bias." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015); *see also Byrd v. The Baltimore Sun Co.*, 279 F. Supp. 2d 662, 669 n.6 (D. Md. 2003) ("[C]laims under 42 U.S.C. § 1981 are subject to the same proof scheme as . . . Title VII claims."), *aff'd sub nom. Byrd v. Baltimore Sun Co.*, 110 F. App'x 365 (4th Cir. 2004). Courts may weigh "obvious alternative explanation[s]" when "consider[ing] the plausibility of inferring discrimination based on [the complaint's] allegations." *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 682).

Applying these standards, Mr. Dorsey's allegations that he was discriminated against by the Board because of his race are conclusory. Mr. Dorsey states that similarly situated non-Black employees were treated more favorably but does not provide any specific examples of such employees or explain what that allegedly more favorable treatment consisted of. *See Aljizzani v. Middle E. Broad. Networks, Inc.,* 178 F. 4th 863,

869 (4th Cir. 2026) ("Without any suggestion that any other employee engaged in the same conduct and was not [treated adversely], an inference of discrimination is unwarranted and implausible[.]") (quotations omitted); *Wiggins v. Baltimore Police Dep't*, Case No. 22-cv-1089-MJM, 2023 WL 6381515, at *7 (D. Md. Sept. 29, 2023) ("[A] plaintiff who relies on comparators to plead a plausible claim of employment discrimination must identify the proposed comparator and establish a plausible basis for believing the plaintiff and proposed comparator were actually similarly situated.") (quotations and alterations omitted). Though Mr. Dorsey describes multiple employees "harassing" him about retiring instead of remaining on sick leave, he never explains how this pressure was related to his race specifically, as opposed to the obvious alternative explanation of an employer not wanting an employee to remain on indefinite leave. Mr. Dorsey contends that the Board failed "to investigate the racially charged use of police force," and that this shows the subsequent pressure on him to retire was motivated by racial discrimination. ECF No. 27 at 19. But while Mr. Dorsey may have provided sufficient allegations to show that the incident with the Sheriff's Office involved at least racial profiling, he has not concretely explained why the Sheriff's deputies' potential discrimination can be attributed to the other Defendants' employment-related actions regarding his medical leave.

Because Mr. Dorsey has failed to plausibly allege discrimination, the Court need not reach the question of whether he has plausibly alleged an adverse employment action, another element of a § 1981 claim. *See Pulley v. KPMG Consulting, Inc.*, 348 F. Supp. 2d 388, 394 (D. Md. 2004) (§ 1981 claim against employer failed because plaintiff's negative performance review could not "be considered an adverse employment action"), *aff'd*, 183 F. App'x 387 (4th Cir. 2006). The Board contends that

because Mr. Dorsey was never terminated or demoted but instead remained on paid leave until his retirement, he cannot plausibly allege an adverse action. ECF No. 18-1 at 22; ECF No. 31 at 5–8. Mr. Dorsey contends that he has pled alteration of the terms, conditions, or benefits of his employment by alleging that the Board failed to investigate the July 2022 incident, offered him reassignment to a position that paid less favorably, and refused to provide him with requested accommodations. ECF No. 27 at 21–22. Citing *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), Mr. Dorsey contends that such allegations are sufficient. *Id.* at 20–22; *see also Bailey v. Islands Mech. Contractor, Inc.*, 827 F. Supp. 3d 639, 657 (E.D.N.C. 2026) ("The *Muldrow* test for adverse employment action applies not only to Title VII claims but also to section 1981 claims."). The Court need not and does not decide whether Mr. Dorsey has successfully alleged an adverse action under *Muldrow* because, even assuming that he has, his § 1981 discrimination claims fail because he has not plausibly alleged discrimination on the basis of race. The Court's decision is without prejudice to the Board's right to reassert its argument in briefing on a potential motion to amend or future motion to dismiss.

The Court likewise need not address the § 1981 claims against the Sheriff's Office. At the hearing, and in his brief, Mr. Dorsey conceded that he may not bring such claims against the Sheriff's Office and seeks instead to amend his complaint to include a § 1983 claim. *See* ECF No. 25 at 7–11. The Court's dismissal of this case will be without prejudice, and it will allow Mr. Dorsey 21 days to file a motion for leave to amend. At the hearing, the Sheriff's Office opposed any amendment as futile. As the proposed amended complaint is not currently before the Court, there is no need to rule on the futility of such an amendment. Instead, Mr. Dorsey must file a standalone motion for

leave to amend with a proposed amended complaint attached, for which the Court will allow a separate briefing process.

### B. Retaliation under § 1981 (Count VI)

"Section 1981 prohibits retaliation for complaints about race discrimination." *Donald v. Novant Health, Inc.*, 800 F. Supp. 3d 623, 635 (E.D.N.C. 2025). "A prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements" as a retaliation claim under Title VII. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015). "[A] plaintiff must prove '(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Id.* (quoting *EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405–06 (4th Cir. 2005)).

Here, Mr. Dorsey's retaliation claim fails because he has not detailed the protected activity he engaged in with any specificity. A plaintiff must allege having opposed discriminatory conduct in some way, whether through a formal complaint or "informal" means. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). Dorsey alleges that he "engaged in protected activity when he [1] complained of disparate treatment, [2] requested accommodations for his trauma-related medical conditions, [3] reported his Workers' Compensation claims on September 22, 2022, and [4] sought accountability for the racially charged incident involving armed deputies." ECF No. 4 ¶ 118.

The second and third activities cannot form the basis of Plaintiff's § 1981 retaliation claim. A Workers' Compensation claim and a request for medical accommodations do not "oppose" discriminatory conduct. *See Burgess v. Bowen*, 466 F.

App'x 272, 282 (4th Cir. 2012) ("[A]n employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct."). Instead, they are activities that seek compensation or benefits for a workplace injury, unrelated to alleged racial discrimination. *See Vega v. Century Concrete Inc.*, Case No. 21-cv-57, 2022 WL 3006390, at *5 (W.D. Va. July 28, 2022) ("[T]he fact that [Plaintiff] filed for worker's compensation has nothing to do with the protections of Title VII, so it cannot be the basis of a Title VII retaliation claim.").

The first and fourth alleged methods of opposition ("complain[ing] of disparate treatment" and "[seeking] accountability for the racially charged incident involving armed deputies") could potentially constitute protected activity, but the complaint is entirely devoid of specifics. Mr. Dorsey does not identify to whom he "complained" or from whom he "sought accountability," let alone when these actions took place. This information should be within Mr. Dorsey's possession. Without it, the complaint also fails to plead causation, as there are no allegations indicating temporal proximity or other connection between the asserted protected activity and any adverse action. *See Okusami v. Maryland Dep't of Health & Mental Hygiene*, Case No. 18-cv-1701-ELH, 2019 WL 1003607, at *22 (D. Md. Feb. 28, 2019) ("To satisfy the third element—a causal connection between the protected activity and the adverse action—a plaintiff . . . must show that the employer took the adverse action '*because* the plaintiff engaged in a protected activity.' Ordinarily, there must exist 'some degree of temporal proximity to suggest a causal connection.'") (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) & *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005)). Mr. Dorsey did not

even specify in his complaint which Defendants he meant to assert a retaliation claim against, clarifying only at the hearing that the claims were against the Board and FASSE. Though the bar for alleging protected activity is "not onerous," *DeMasters*, 796 F.3d at 417, Mr. Dorsey has failed to meet it by not alleging any specific facts regarding opposition to discrimination. *See Luy v. Baltimore Police Dep't*, 326 F. Supp. 2d 682, 689 (D. Md. 2004) ("[T]he court need not accept . . . conclusory factual allegations devoid of any reference to actual events.") (quoting *Baltimore-Clark v. Kinko's Inc.,* 270 F. Supp. 2d 695, 698 (D. Md. 2003), *aff'd*, 120 F. App'x 465 (4th Cir. 2005)).

As with the discrimination claim, Defendants argued that Mr. Dorsey's retaliation claim should fail because he did not suffer any adverse employment action. ECF No. 8-1 at 23–24; ECF No. 18-1 at 24. Again, the Court will need not decide that because Mr. Dorsey has not alleged another required element, protected activity.

### C. Due process under § 1983 (Count VII)

In Count VII, Mr. Dorsey alleges that the Board "deprived [him] of his property and liberty interests in continued employment and professional reputation without due process of law." ECF No. 4 ¶ 140. Count VII is alleged against the Board and "Supervisory Defendants." ECF No. 4 at 21. But as explained above, Mr. Dorsey has withdrawn any claims against individual, unidentified "supervisory defendants."

Regarding the Board, claims under § 1983 may only proceed against government entities (as opposed to individual government actors) as *Monell* claims. *See Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) ("In *Monell,* the Court recognized that school boards and municipalities are indistinguishable for purposes of § 1983.") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). *"Monell* permits suits against a municipality for a federal constitutional deprivation only when the

municipality undertook the allegedly unconstitutional action pursuant to an 'official policy' or 'custom.'" *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 532–33 (4th Cir. 2022); *see also Green v. Obsu*, Case No. 19-cv-2068-ELH, 2021 WL 165135, at *12 (D. Md. Jan. 19, 2021) ("The Supreme Court determined in *Monell* that local governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that resulted in a violation of the plaintiff's rights."). Mr. Dorsey has identified no such official policy or custom at issue here. Though he cites his school's "unwritten rules" about responding to alarms, ECF No. 27 at 30, that "policy" (to the extent it qualifies as a policy for *Monell* purposes) had nothing to do with the injuries he alleges in his due process claim—namely that he was forced to retire due to what he alleges was a pressure campaign and a failure to take his mental health condition seriously. He cites no official custom or policy related to these actions.

In any event, Mr. Dorsey's § 1983 claims are untimely. For claims under § 1983, the statute of limitations "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). "In Maryland, the applicable statute of limitations is three years." *Welshons v. Baltimore City Corr. Ctr.*, Case No. 18-cv-2467-TDC, 2020 WL 1939716, at *6 (D. Md. Apr. 22, 2020) (citing Md. Code Ann., Cts. & Jud. Proc. § 5-101). Mr. Dorsey filed his complaint in this matter on November 13, 2025, making the relevant deadline for limitations purposes November 13, 2022. But the only events alleged with specific dates in the complaint occurred before that date. Mr. Dorsey alleges that the incident with the Sheriff's Office occurred on July 30, 2022, ECF No. 4 ¶ 23, that he had a conversation with an HR director on September 8, 2022, *id.* ¶ 43,

and that he filed a Worker's Compensation claim on September 22, 2022, *id.* ¶ 44. Mr. Dorsey alleges no other conduct with specific dates occurring after November 13, 2022. Accordingly, even if he had successfully pled a *Monell* claim, his claim is also untimely.

### D. FMLA claims

Mr. Dorsey alleges both interference and retaliation claims under the FMLA. ECF No. 4 ¶¶ 144–48. His allegations fail to state either claim.

"[T]o make out an FMLA interference claim, an employee must demonstrate (1) that he is entitled to an FMLA benefit; (2) that his employer interfered with the provision of that benefit; and (3) that the interference caused him harm." *Adkins v. CSX Transportation, Inc.*, 70 F.4th 785, 796 (4th Cir. 2023). "The FMLA provides no relief *unless the employee has been prejudiced* by the violation." *Id.* (quotations omitted). Mr. Dorsey's complaint states that "Defendants unlawfully interfered with [his] FMLA rights by misclassifying his leave, failing to provide required notices, and discouraging him from exercising his rights under the FMLA." ECF No. 4 ¶ 146. But nowhere in the complaint does he specify when he made his FMLA request, to whom, whether it was approved or denied, which individuals "misclassif[ied]" his leave request, or who "discourag[ed]" him from taking FMLA leave. Elsewhere in the complaint, he states that an HR official advised him that "if he was excused by a doctor, he could submit a Workers' Compensation[] claim [and] use his sick/personal or annual leave with medical documentation." *Id.* ¶ 43. But he does not explain whether this leave was under the FMLA, or if it was paid annual leave under a benefit of his employment. Mr. Dorsey also alleged in his complaint that he was "still employed using the remaining sick leave he has accrued" at the time of his complaint, *id.* ¶ 142, and his counsel stated at the hearing that he was on paid sick leave the entire time between the incident in July 2022

and his retirement in February 2026. Mr. Dorsey's counsel also confirmed that his FMLA leave had actually been approved by the Board during this time, but that the approval of FMLA leave had been delayed in a manner that caused Mr. Dorsey to use his accrued, paid leave. But this allegation was not in the complaint. And even if it was, it is unclear how any delay would have ultimately prejudiced Mr. Dorsey. He was on *paid* leave for over three years and the FMLA merely provides 12 weeks of unpaid leave per year. Because Mr. Dorsey's complaint did not explain which Defendants interfered with his FMLA leave or how they did so, or how the interference caused him harm, his FMLA interference claim cannot survive.

Mr. Dorsey also attempts to plead an FMLA retaliation claim, alleging that "Defendants further retaliated against [him] for seeking FMLA leave by delaying approval, harassing him about returning to work, and pressuring him to retire." *Id.* ¶ 147. "An FMLA plaintiff claiming retaliation 'must first make a prima facie showing that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity.'" *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016) (quoting *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006)). Again, Mr. Dorsey has not pled any specifics regarding his FMLA leave, and it is unclear from the complaint whether the "pressure" to retire occurred while Mr. Dorsey was on FMLA leave or accrued sick leave, or whether it was in connection with an FMLA request. His FMLA retaliation claim also fails.

In any event, Mr. Dorsey's FMLA claims as pled are untimely. "The statute of limitations for a claim under the FMLA is two years." *Bosse v. Baltimore Cnty.*, 692 F. Supp. 2d 574, 583 (D. Md. 2010) (citing 29 U.S.C. § 2617(c)(1)). If the claimed violation

was willful, the statute of limitations extends to three years. *Id*. Either way, Mr. Dorsey's complaint was filed in November 2025, and the only date he provides related to any specific communication from an HR official occurred in September 2022, which would make any allegations related to that interaction untimely. Mr. Dorsey does not plead any other specific dates related to his FMLA interference or retaliation claims. Accordingly, his FMLA claims are untimely, in addition to failing to state a claim on which relief can be granted. In his opposition to FASSE's motion, Mr. Dorsey contends that equitable tolling should apply for the period he was seeking workers' compensation. ECF No. 26 at 12–13, 26. But he does not cite any federal legal authority for this proposition, or even provide in his briefing the date that he requested FMLA leave, was denied FMLA leave, or was retaliated against in relation to FMLA leave.

Because his complaint fails to state an FMLA interference or retaliation claim, and because such claims are untimely, Mr. Dorsey's FMLA claims are dismissed.

### E. State law claims (Counts I–IV, IX–X)

Having dismissed Mr. Dorsey's federal claims, that leaves the tort claims in Counts I–IV and claims related to workers' compensation in Counts IX and X under Maryland state law. Federal courts may hear certain state claims related to federal claims via supplemental jurisdiction. 28 U.S.C. § 1367(a). But a district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[A] district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001); *see also Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 948 F.

Supp. 2d 525, 537 (D. Md. 2013), *aff'd*, 593 F. App'x 204 (4th Cir. 2014) ("[S]upplemental jurisdiction is a doctrine of discretion, and not a plaintiff's right."). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Morales v. Richardson*, 841 F. Supp. 2d 908, 914 (D. Md. 2012), *aff'd*, 475 F. App'x 894 (4th Cir. 2012); *see also Gregory v. Otac, Inc.*, 247 F. Supp. 2d 764, 773 (D. Md. 2003) ("A majority of the courts which have considered the question have declined to exercise pendent jurisdiction over a state claim when the federal claims have been disposed of prior to a full trial on the merits."); 13D *Wright & Miller's Federal Practice & Procedure* § 3567.3 (3d ed. rev. 2026) ("As a general matter, a court will decline supplemental jurisdiction if the underlying claims are dismissed before trial.").

Here, the case is at an early stage, well before trial. The parties have not invested significant resources in litigating the case. Considering principles of fairness, federalism, judicial economy, and comity, this Court will decline to exercise supplemental jurisdiction over Mr. Dorsey's state law claims.

## IV. CONCLUSION

For the reasons explained above, all Defendants' motions to dismiss are granted, and the complaint will be dismissed without prejudice. Mr. Dorsey will be granted 21 days to amend, after which the federal law claims will be deemed dismissed with prejudice. A separate order follows.

Date: August 25, 2026

*/s/*
Adam B. Abelson
United States District Judge